SO ORDERED.

SIGNED this 17th day of May, 2024.



*Mitchell L. Herren*
Mitchell L. Herren
United States Bankruptcy Judge

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE:<br><br>ARROWHEAD FINANCIAL ICT, LLC,<br><br>                       Debtor. | Case No. 22-10066<br>Chapter 7 |
| DARCY D. WILLIAMSON,<br>CHAPTER 7 TRUSTEE,<br><br>                       Plaintiff,<br>vs.<br><br>AUCTION CREDIT<br>ENTERPRISES, LLC,<br><br>                       Defendant. | Adv. No. 23-5037 |

<u>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR
IMPOSITION OF CIVIL SANCTIONS**</u>

1

This matter comes before the Court on Plaintiff Darcy Williamson, Chapter 7 Trustee's corrected second amended motion for sanctions against Defendant Auction Credit Enterprises, LLC, for failing to produce checks responsive to a subpoena duces tecum issued in the bankruptcy case.[1] Because the Defendant had key checks in its possession that were highly relevant to Plaintiff's pre-filing investigation of the preference action alleged in this adversary proceeding, but failed to produce the checks without adequate excuse, the Court, pursuant to its inherent authority, finds Defendant in contempt of the subpoena under Fed. R. Civ. P. 45(g) and awards attorney's fees to Plaintiff as compensatory sanctions. Plaintiff's motion is, therefore, granted in part.[2]

I. Facts

Debtor, Arrowhead Financial ICT, LLC, ran a used car sales lot and received floor plan loans on vehicles from various entities, including Defendant, to operate its business.[3] After discovering that one of the managers was embezzling funds, Debtor filed a voluntary chapter 11 bankruptcy on February 2, 2022, that was later converted to chapter 7 on May 2, 2022.

After conversion, Plaintiff, who was investigating potential preference claims, filed a Notice of Intent to Issue Subpoena Duces Tecum to Defendant on November 3, 2022.[4] The subpoena (and Ex. A thereto describing the documents to be produced)

---

[1] Doc. 31.
[2] Plaintiff appeared by her attorney Justin T. Balbierz. Defendant appeared by its attorney Victor F. Weber.
[3] Doc. 1, p. 5, ¶33.
[4] Case No. 22-10066, Doc. 83.

attached to the Notice of Intent, directed Defendant to produce *inter alia* the following:

> For the period commencing January 1, 2021 through December 31, 2021, . . .
> 1. All documents and records within your possession and control relating to floor plan loans issued by Auction Credit Enterprises, LLC to Arrowhead Financial ICT, LLC, including, without limitation, all . . . purchase records, bills of sale, . . . titles, records of collateral, *checks*, bank drafts, payment records, receipts, and transaction records. [Emphasis added].[5]

Defendant did not raise an objection to the subpoena and produced some responsive records.[6]

Defendant also produced a letter from Defendant's Vice President of Collections, Edward Tremblay, discussing the individual floor plan loans to Debtor.[7] The letter indicated that the method of payments made on Debtor's floor plan in the paid history report were effected by "ACH" transactions and Defendant was otherwise unable to determine if anybody other than the Debtor made the payments.[8]

On October 2, 2023, Plaintiff sent Defendant a demand letter (the "Demand Letter") seeking turnover of seven specific alleged preferential transfers from Debtor to Defendant in the aggregate amount of $27,457, listing the respective

---

[5] Case No. 22-10066, Doc. 83-1, p. 3 ¶1 (Ex. A to subpoena) and Doc. 83-2 (Subpoena).
[6] The record does not contain a service copy of the subpoena, however, Defendant made clear at the hearing that it did not object to any aspect of the subpoena or its service.
[7] Doc. 31, ¶ 10.
[8] *Id.* at Ex. B, p. 29.

3

transfer dates, amounts, vehicle descriptions, and the last six digits of the VINs.[9] Defendant never responded to the Demand Letter.

Plaintiff then filed her adversary complaint against Defendant on November 29, 2023. Under Count I of the complaint, Plaintiff sought to avoid and recover the seven alleged preferential transfers under 11 U.S.C. § 547.

On January 2, 2024, Defendant filed a Motion to Dismiss, arguing that Count I of the complaint should be dismissed because four of the seven transfers (totaling $26,379) were not made by Debtor, as evidenced by attached copies of four checks (the "Checks"),[10] which were found by Defendant only after it, in preparation for its answer and motion to dismiss, went through its records again. It is undisputed these Checks were responsive to the subpoena, but not produced.

Because the Checks established that Debtor did not pay Defendant on these four transfers, the Checks invalidated most of Plaintiff's preference claim in Count I.[11] Plaintiff amended her complaint on January 14, 2024, and filed her first motion for sanctions under 11 U.S.C. § 105(a) due to Defendant's failure to produce the Checks in responding to the subpoena.[12] At the hearing on the Sanctions Motion,

---

[9] *Id.* at Ex. D, p. 35.
[10] Doc. 31, ¶18 and Ex. E, p. 39.
[11] The preference statute is applicable to "transfer[s] of an interest of the debtor in property" to or for the benefit of a creditor. 11 U.S.C. § 547(b).
[12] Plaintiff filed four motions for sanctions, docs. 8 (Motion for Sanctions), 10 (Amended Motion for Sanctions), 30 (Second Amended Motion for Sanctions) and 31 (Corrected Second Amended Motion for Sanctions). At the hearing, Plaintiff explained that the Amended Motion, doc. 10, only added minor technical corrections, the Second Amended Motion, doc. 30, provided a more thorough legal argument and asserted the amount of legal fees sought by Plaintiff under Fed. R. Civ. P. 45(g), and the Corrected Second Amended Motion, doc. 31, like the Amended Motion, only made minor technical corrections to the Second Amended Motion. It is the Court's impression, as confirmed by Plaintiff, that the Corrected Second Amended Motion, doc. 31, comprises Plaintiff's complete argument, so it will review and consider the merits of this motion and will refer to it as the "Sanctions Motion" in this Order.

4

the Court received testimony and exhibits from Plaintiff's counsel regarding his time spent on the case and resulting fees, including his investigation into the potential preferential transfers, admitted one document offered by Defendant, heard argument from both parties, and took this matter under advisement.

II. **Jurisdiction**

This Sanctions Motion is related to discovery regarding a core proceeding to avoid and recover alleged preferences, which arises under title 11 over which this Court has subject matter jurisdiction.[13] Venue is proper in this District.[14]

III. **Analysis**

In its Sanctions Motion, Plaintiff argues that relief for civil contempt in the form of sanctions is warranted under 11 U.S.C. § 105(a) and Fed. R. Civ. P. 45(g), made applicable by Fed. R. Bankr. P. 9016, because Defendant failed to produce the Checks and comply with the subpoena, causing Plaintiff to incur $8,717.80 in attorney's fees to track or trace the (then) unidentified transfers, bring the preference claims in Count I, and, once Plaintiff learned of the Checks, amend the complaint, respond to the Defendant's Motion to Dismiss, and pursue the Sanctions Motion.

Defendant opposes the Sanctions Motion arguing that (1) it did not act in bad faith, (2) the Checks were unintentionally omitted due to being misfiled in its records, (3) any harm that Plaintiff may have suffered was mitigated by other

---

[13] 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(F), and Amended Order of Reference, D. Kan. S.O. 13-1.
[14] 28 U.S.C. § 1409(a).

5

documents produced by Defendant showing the Checks were not issued by Debtor, (4) the Sanctions Motion unnecessarily increased the cost of litigation, and (5) Plaintiff did not act in good faith in pursuing the preference claims.

### A. Applicable Legal Theory for Contempt of Subpoena Duces Tecum and Sanctions

Plaintiff brought this contempt proceeding under both § 105(a) and Rule 45(g). The Court need not exercise its authority under § 105(a) to find Defendant in contempt and impose sanctions under Rule 45(g).[15] Rule 45(g) expressly authorizes the Court to hold a person in contempt for failure to obey a subpoena. Attorney's fees may be awarded as a sanction under either legal theory, but Plaintiff may obtain only a single recovery for the contempt. The Court will therefore disregard its contempt power under § 105(a) and determine this matter on the basis of Rule 45(g).

Procedurally, most courts require an order to compel compliance before awarding sanctions under Rule 45(g).[16] But here it would be pointless to require an order to compel because Defendant has belatedly provided the Checks and an order to compel would only further waste attorney time and resources. Under these circumstances, the Court will not require an order to compel.

---

[15] *See* Chambers v. NASCO, Inc., 501 U.S. 32, 47 (1991) (courts do not have to rely on inherent authority to issue sanctions when "many other mechanisms permit a court to impose attorney's fees as a sanction for conduct which merely fails to meet a reasonableness standard.").

[16] *See* Fed. R. Civ. P. 45(g) Advisory Committee's Notes ("[I]t would be rare for a court to use contempt sanctions without first ordering compliance with a subpoena."); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164, 2007 WL 852521, at *7 (D. Kan. Mar. 16, 2007); *Duffy v. Lawrence Mem'l Hosp.*, No. 2:14-CV-2256, 2017 WL 1806429, at *2 (D. Kan. May 5, 2017) (citing Advisory Committee's Notes); *U.S. Sec. Exch. Comm. v. Hyatt*, 621 F.3d 687, 694 (7th Cir. 2010).

6

### B. Contempt under Rule 45(g)

Rule 45(g) provides that a court may hold in contempt a "person who, having been served [with a subpoena], fails without adequate excuse to obey the subpoena or an order related to it."[17] As the moving party, Plaintiff has the burden to show, by clear and convincing evidence, that a valid court order existed and the alleged contemnor, Defendant, knew of the order yet disobeyed it.[18] If the Plaintiff successfully meets its burden, that showing constitutes prima facie evidence of contempt.[19]

The burden then shifts to the Defendant to produce evidence of an "adequate excuse" that prevented it from complying with the subpoena.[20] The Federal Rules do not define what constitutes an "adequate excuse," but case law suggests that an adequate excuse may exist in situations where the alleged contemnor was prevented — due to circumstances beyond its control — from complying with the

---

[17] FED. R. CIV. P. 45(g), made applicable in bankruptcy by FED. R. BANKR. P. 9016. Due process requires that a person facing contempt sanctions be given adequate notice and fair opportunity to be heard in civil contempt proceedings. *U.S. Sec. Exch. Comm.*, 621 F.3d at 694.
[18] *Reliance Ins. Co. v. Mast Constr. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998); *Heinold Hog Mkt., Inc. v. McCoy*, 700 F.2d 611, 614–15 (10th Cir. 1983) (citing cases); *Food Lion, Inc. v. United Food & Com. Workers Int'l Union*, 103 F.3d 1007, 1016 (D.C. Cir. 1997). *See also Taggart v. Lorenzen*, __ U.S. __, 139 S. Ct. 1795, 1799 (2019) (civil contempt for violating an order is established if there is "no fair ground of doubt" as to whether the order was violated).
[19] *Heinold Hog Mkt., Inc.*, 700 F.2d at 615.
[20] Fed. R. Civ. P. 45(g).

subpoena.[21] A showing of bad faith is not required under Rule 45(g) for a prima facie case of contempt.[22]

Here, it is not disputed that the subpoena existed, and Defendant knew of the subpoena but did not provide the Checks as required. This establishes prima facie evidence of contempt. The burden then shifts to Defendant to show it had an adequate excuse for its noncompliance.

Defendant argues the Checks were unintentionally omitted due to being misfiled in its records, and therefore its employees responding to the subpoena did not locate the Checks and produce them. This was argument only, and Defendant provided no evidence substantiating this claim. However, even if true, this does not constitute an adequate excuse. Defendant failed to demonstrate that its own internal mishap or record-keeping was outside its control such that the mishap or internal procedures *prevented it from complying*.[23]

In short, Defendant's mishandling of the Checks is not an adequate excuse that would justify Defendant's noncompliance, notwithstanding that the Court finds no deliberate or intentional conduct by Defendant to evade compliance with the

---

[21] *See In re Westinghouse Elec. Corp. Uranium Conts. Litig.*, 563 F.2d 992, 996 (10th Cir. 1977) (the party had an adequate excuse for partial noncompliance because if the party had fully complied, they would have violated Canadian law and incurred sanctions and, potentially, imprisonment); *c.f. Food Lion, Inc.*, 103 F.3d at 1019 (a party's faulty filing system that made it difficult to find relevant documents was not an adequate excuse); *Heinold Hog Mkt., Inc.,* 700 F.2d at 615 (party's argument that they no longer had authority to access records did not amount to an adequate excuse when they did not provide any evidence that would support their claim); *Mattie T. v. Johnston,* 74 F.R.D. 498, 502–03 (N.D. Miss. 1976) (party's reliance on attorney's advice was not an adequate excuse for disobeying a subpoena)).
[22] *See Universal Motor Oils Co. v. Amoco Oil Co.*, 743 F. Supp. 1484, 1487 (D. Kan. 1990) (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)).
[23] *See Food Lion, Inc.,* 103 F.3d at 1019 (refusing to excuse compliance based on faulty management practices because "future courts would be deluged with litigants blaming 'faulty' record systems for noncompliance.").

8

subpoena. Nor is Defendant's contention that its noncompliance was excused because Exhibit 1 of doc. 14, which was admitted at the hearing, informed Plaintiff of the same information that would have been provided by the unproduced Checks. The Court finds that this exhibit – a seven-page, fine print spreadsheet of cryptic "account notes," and the only exhibit offered at the hearing by Defendant – did not provide information sufficient to place any reasonably diligent person on notice that the transfers covered by the Checks did not come from Debtor.

Finally, Defendant's remaining argument is also unpersuasive. Plaintiff's alleged lack of good faith in bringing the preference claim does not excuse Defendant's failure to comply with the subpoena, *i.e.*, the ultimate issue currently before the Court. Moreover, it is otherwise logical to conclude that Plaintiff, without any clear evidence to the contrary, reasonably believed in good faith that the unaccounted-for funds and transfers were preferential transfers.[24] Had Defendant produced the Checks in response to the subpoena (or even the Demand Letter), Plaintiff would have discovered prior to filing the adversary complaint that there was no factual basis for a preference with respect to the Checks.

Because Defendant fails to show an adequate excuse for its noncompliance with the subpoena, the Court finds Defendant in contempt under Rule 45(g). Next, the Court will determine whether Plaintiff's requested contempt sanctions are appropriate.

---

[24] The Plaintiff's issuance of the subpoena was likely undertaken to satisfy due diligence standards and consideration of Defendant's potential defenses before pursuing the preference claim. *See* 11 U.S.C. § 547(b).

9

### C. Plaintiff's Attorney's Fees as Sanctions for Contempt under Rule 45(g)

Though Rule 45(g) recognizes the Court's authority to hold Defendant in contempt for noncompliance with the subpoena, it has "no self-contained mechanism" to enforce compliance.[25] Instead, the Court relies on its inherent authority to impose sanctions to maintain order and address improper behavior in the proceedings before it.[26] This inherent authority authorizes the Court to impose compensatory monetary sanctions for contempt, including awarding attorney's fees incurred due to the noncompliance and pursuing this Sanctions Motion.[27]

Civil contempt serves to either (1) compel or coerce obedience with a court order, or (2) compensate parties for losses resulting from the noncompliance.[28] Because civil contempt is a remedial measure, a showing of willfulness is not required to justify an award of attorney's fees.[29] The issue under the facts of this case is not compelling obedience with the subpoena (Defendant has since produced

---

[25] *Worms v. Rozhkov (In re Markus)*, 78 F.4th 554, 566, 563-67 (2d Cir. 2023) (discussing multiple sources of a bankruptcy court's authority to impose civil contempt sanctions for past noncompliance and applying its inherent authority to address contempt of a subpoena). *See also Chambers*, 501 U.S. at 43.
[26] *Jones v. Bank of Santa Fe (In re Courtesy Inns, Ltd., Inc.)*, 40 F.3d 1084, 1089 (10th Cir. 1994). *See also Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375-76 (2007) (bankruptcy courts also possess inherent power to sanction abusive litigation practices); *In re Van Winkle*, 598 B.R. 297, 299-300 (Bankr. D.N.M. 2019).
[27] *In re Van Winkle*, 598 B.R. at 301-02 (recognizing clear authority to award attorney's fees and costs for preparing and prosecuting contempt and awarding attorney fees of $20,906 for time attributable to violation of stipulated order).
[28] *See Reliance Ins. Co.*, 159 F.3d at 1318; *Smith v. Union Pac. R.R. Co.*, 878 F. Supp. 171, 173 (D. Colo. 1995); *Mountain Am. Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444, 447 n.2 (10th Cir. 1990) (quoting *Gibbons v. Haddad (In re Haddad)*, 68 B.R. 944, 952 (Bankr. D. Mass. 1987)); *Food Lion, Inc.*, 103 F.3d at 1017 n.14; *Universal Motor Oils Co.*, 743 F. Supp. at 1487.
[29] *Universal Motor Oils Co.*, 743 F. Supp. at 1487; *John Zink Co. v. Zink*, 241 F.3d 1256, 1261–62 (10th Cir. 2001).

10

the Checks), but rather compensating Plaintiff for any cost incurred as a result of Defendant's failure to comply with the subpoena.[30]

Plaintiff requests a total of $8,717.80 in attorney's fees for work done before and after the Demand Letter (including reviewing documents submitted in response to the subpoena and preparing the adversary complaint against Defendant) that, Plaintiff argues, are directly attributable to Defendant's noncompliance.[31] Defendant disagrees, arguing that Plaintiff's billed hours were excessive and unnecessary, and the resulting fees are unreasonable and punitive.

As noted previously, Rule 45(g) does not provide any guidance on awarding sanctions. The Court's sanction authority is based on its inherent powers. Because the compensatory sanctions sought here by Plaintiff are her attorney's fees incurred as a result of noncompliance with the subpoena, the Court will apply 11 U.S.C. § 330(a) and the "adjusted lodestar approach" to determine whether Plaintiff's requested attorney's fees are reasonable.[32] Under the adjusted lodestar approach, the Court must first determine the reasonable compensation by multiplying the reasonable number of hours expended by the attorney's reasonable hourly rate.[33] With this calculation, the Court then considers the § 330(a)(3) factors and the *Johnson* factors to determine whether to reduce or increase the amount of

---

[30] Because Defendant belatedly provided the Checks, no relief can be afforded to Plaintiff by compelling obedience with the subpoena.
[31] Doc 31, Ex. G.
[32] *See e.g. Karmi v. Atallah (In re Karmi)*, 638 B.R. 804, 817 (Bankr. D. Kan. 2022).
[33] *See In re S-Tek 1, LLC*, No. 20-12241, 2023 WL 1787893, at *4 (Bankr. D.N.M. Feb. 6, 2023) (citing *Mkt. Ctr E. Retail Prop., Inc. v. Lurie (In re Mkt. Ctr E. Retail Prop., Inc.)*, 730 F.3d 1239, 1246 (10th Cir. 2013)); *Miniscribe Corp. v. Harris Tr. Co. (In re Miniscribe Corp.)*, 309 F.3d 1234, 1243 (10th Cir. 2002).

11

compensation.[34] The burden is on Plaintiff to show that the requested fees are reasonable.[35]

### (1) Lodestar Calculation

According to Plaintiff's invoices that were admitted as evidence, as well as an admitted summary of the invoices, Plaintiff's counsel billed a total of 31.7 hours at an hourly rate of $275, equaling $8,717.80 in attorney's fees, as a result of Defendant's noncompliance. Plaintiff's distribution of time on tasks performed is set forth below:

| Matter | Fees | % of Total |
|---|---|---|
| Demand to ACE (10/14/23) | $481.25 | 5.52% |
| Adversary Complaint (11/29/23) (Dkt. 1) | $853.53 | 9.79% |
| Resp. to ACE Mtn to Dismiss (1/18/24) (Dkt. 11). | $1,549.01 | 17.77% |
| Amended Adversary Complaint | $907.50 | 10.41% |
| Motion for Sanctions | $3,217.50 | 36.91% |
| Miscellaneous Work Related to § 547 Claim vs. ACE | $1,709.01 | 19.60% |

Defendant does not dispute the reasonableness of Plaintiff's counsel's hourly rate. It does, however, argue that the hours billed were excessive and unnecessary. However, Defendant produced no evidence other than Exhibit 1 from its objection (doc. 14) to support its claim, arguing this document put Plaintiff on notice of information that made the Checks unnecessary.

---

[34] *In re S-Tek 1, LLC*, 2023 WL 1787893, at *4; *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).
[35] Id.

12

Case 23-05037 Doc# 42 Filed 05/20/24 Page 12 of 19

Although Defendant's argument about Exhibit 1 is unpersuasive, the Court agrees that some of counsel's fees were not incurred as a result of Defendant's noncompliance, and it will subtract such fees from the requested $8,717.80. Specifically, $1,549.01 in fees attributable to Plaintiff's response to the motion to dismiss (doc. 11) will not be awarded because the response does not relate to the preferential transfers alleged in Count I, nor Defendant's noncompliance. Nor will the Court award fees that are associated with counsel's work on the initial motion for sanctions (doc. 8) or the amended motion for sanctions (doc. 10) in the amount of $962.50, as neither motion raised Rule 45(g), provided a comprehensive argument that put Defendant on notice of the specific amount requested in attorney's fees, or provided invoices in support of the requested sanctions..

After properly excluding the fees that are not attributable to Defendant's noncompliance, the Court finds that the correct lodestar calculation is $6,206.29 ($8,717.80 — ($962.50 + $1,549.01)). The Court will now analyze the reasonableness of counsel's fees under the § 330(a) and *Johnson* factors.

### (2) Reasonableness of Fees under the § 330(a)(3) and *Johnson* Factors

Section 330(a)(3) provides:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
> (B) the rates charged for such services;

13

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward completion of a case under this title;
(D) whether the services performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3). Even after the adoption of § 330, courts in the Tenth Circuit continue to apply the *Johnson* factors, in addition to the factors under § 330, to determine the reasonableness of attorney's fees.[36] The relevant *Johnson* factors are:

(1) The time and labor required.
(2) The novelty and difficulty of the questions.
(3) The skill requisite to perform the legal service properly.
(5) The customary fee.
(6) Whether the fee is fixed or contingent.
(8) The amount involved and the results obtained.
(9) The experience, reputation, and ability of the attorneys.
(12) Awards in similar cases.[37]

---

[36] *In re Mkt. Ctr. E. Retail Prop., Inc.*, 730 F.3d at 1246–47.
[37] *Id.* at 1247 (citing *Johnson*, 488 F.2d at 717-19). There are 12 *Johnson* factors in total:

(1) The time and labor required.
(2) The novelty and difficulty of the questions.
(3) The skill requisite to perform the legal service properly.
(4) The preclusion of other employment by the attorney due to acceptance of the case.
(5) The customary fee.
(6) Whether the fee is fixed or contingent.
(7) Time limitations imposed by the client or the circumstances.
(8) The amount involved and the results obtained.
(9) The experience, reputation, and ability of the attorneys.
(10) The "undesirability" of the case.
(11) The nature and length of the professional relationship with the client.
(12) Awards in similar cases

14

However, because the *Johnson* and § 330 factors significantly overlap, the Court will specifically apply the § 330 factors and identify any *Johnson* factors that are also applicable under the respective analysis.

### a. Time Spent on Services and *Johnson* Factors Nos. 1 and 2

Except as noted in the lodestar calculation section, the time and labor spent on services was reasonable considering the time required to investigate the various sources of funds, review pertinent documents that support the claim, research potential claims, and draft various documents. The paper trail was complicated, and the trustee had a duty to investigate before bringing the action. Therefore, this factor is satisfied.

### b. Rate Charged and *Johnson* Factors Nos. 5 and 6

Plaintiff argues that the attorney's fixed hourly fee of $275 is reasonable considering the value of similar services in Wichita, Kansas. The Court agrees and finds Plaintiff's hourly rate is reasonable.

### c. Whether the Services were Necessary to the Administration of the Estate and *Johnson* Factor No. 8

An element of "necessary" is whether the services benefited the estate.[38] Plaintiff argues the services her counsel provided were beneficial to the estate as

---

*Id.* However, the Court determines that only eight of the factors are relevant to the situation as there is no evidence regarding whether counsel was precluded from other employment, was under a time limitation (aside from filing this adversary within the statute of limitations, § 546(a)), the "undesireability" of the case, nor the nature and length of the professional relationship. Therefore, the Court will disregard these factors.

[38] *In re Reynolds*, 835 F. App'x 395, 399 (10th Cir. 2021) (question of whether services were beneficial must be determined before a reasonableness inquiry) (citing *Rubner & Kutner, P.C. v. U.S. Trustee (In re Lederman Enterprises, Inc.)*, 997 F.2d 1321, 1323 (10th Cir. 1993)).

15

Plaintiff and her counsel sought to recover $27,475 in preferential transfers under Count I and $175,290 in total (including the Checks at issue) from Defendant on behalf of the bankruptcy estate.[39] Because such an amount would be a large benefit to the estate (assuming that the recovery was otherwise warranted), the Court finds counsel's services were necessary to the administration of the estate.

> **d. Whether Services were Performed Within a Reasonable Time Commensurate with the Complexity, Importance, and Nature of the Problem, Issue, or Task Addressed and *Johnson* Factor No. 3**

Plaintiff argues that the time spent on this case was reasonable considering the complexity and difficulty in analyzing and investigating the issues.[40] Indeed, this case involves an alleged embezzlement scheme that one of Debtor's managers employed, involving a complex and sophisticated web of transfers of funds and vehicles to and from various entities.[41] With limited information, Plaintiff then had to dissect and identify potential claims against such entities, and Defendant is not the only entity against whom Plaintiff has asserted an avoidance claim. With such a difficult case, it is reasonable that it would take significant time to delve into the complicated financial records and research potential causes of action. The Court finds this factor to be satisfied.

> **e. Whether Attorney is Board Certified or Otherwise Has Demonstrated Skill and Experience in the Bankruptcy Field and *Johnson* Factor No. 9**

---

[39] Doc. 31, p. 14.
[40] Doc. 31, p. 13.
[41] Doc. 1, p. 3, ¶14-15.

16

The parties do not dispute that Plaintiff's attorney has practiced law in Wichita for seven and a half years and possesses experience in bankruptcy litigation and has a reputation for quality work.

### f. Whether the Compensation is Reasonable based on the Customary Compensation Charged by Comparably Skilled Practitioners in Other Cases

Based on this Court's experience in non-bankruptcy matters, the rates charged by Plaintiff are reasonable as they are comparable to the rates of similarly experienced attorneys for non-bankruptcy work in Wichita, Kansas. Therefore, this factor is satisfied.

### g. Awards in Similar Cases, *Johnson* Factor No. 12

Although this case presents unique circumstances, awarding reasonable attorney's fees as a result of noncompliance under Rule 45 is relatively common, as Plaintiff points out. For example, in *Noble v. Wells Fargo Bank*, the court awarded sanctions under Rule 45 in the form of attorney's fees after a third party refused to produce documents despite receiving payments for the documents from both the plaintiff and defendant.[42] Similarly, in *Gesualdi v. Hardin Contracting, Inc.*, the court awarded $5,816.16 in attorney's fees and costs incurred as a result of the third party's failure to produce documents and appear at a deposition.[43] In line with these cases, awarding attorney's fees for Defendant's noncompliance with a subpoena is reasonable. This factor is satisfied.

---

[42] *Noble v. Wells Fargo Bank, N.A.*, No. 14-cv-01963, 2017 WL 3116823, at *3-4 (E.D. Cal. Jul. 21, 2017).
[43] *Gesualdi v. Hardin Contracting, Inc.*, No. 09-cv-0683, 2016 WL 2654068, at *2 (E.D.N.Y. May 6, 2016).

17

### D. Summary regarding Sanctions

Defendant did not object to the subpoena or its service. At the hearing on the Sanctions Motion, Plaintiff produced evidence of costs that were attributable to the work involving the missing Checks and bringing the Sanctions Motion. Defendant did not produce any evidence at the hearing other than Exhibit 1 to doc. 14. Further, Defendant's claim that its failure to produce the Checks was inadvertent or unintentional and attributable to its internal record-keeping procedures was simply argument of counsel. Even if the Defendant's argument was supported by evidence, it did not prove an adequate excuse. Although the Court does not find any bad faith on the part of Defendant, proof of such is not required for contempt or imposition of sanctions under the circumstances here. Defendant did not provide any evidence that it took reasonable steps to respond to the subpoena. Nor was Defendant's argument that Plaintiff's work was unnecessary persuasive. For these reasons, the Court finds sanctions are warranted in the nature of attorney's fees incurred by Plaintiff as compensation for Defendant's failure to comply with the subpoena. However, as the Court discussed, the requested fees will be reduced to $6,206.29 as this amount encompasses the work directly attributable to Defendant's noncompliance and is reasonable under the § 330(a) factors and *Johnson* factors.

## IV. Conclusion

Plaintiff's Sanctions Motion is granted in part. The Court finds Defendant in contempt of the subpoena duces tecum under Rule 45(g) by failing to produce the Checks and imposes a compensatory sanction against Defendant in the amount of

$6,206.29 for Plaintiff's resulting attorney's fees. Judgment is entered against Defendant in the amount of $6,206.29 and the judgment shall bear interest at the rate of 5.16 per cent per annum pursuant to 28 U.S.C. § 1961 from the date of entry of this Order until paid in full.

###

19

Case 23-05037    Doc# 42    Filed 05/20/24    Page 19 of 19